IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:26-CR-86 |
| | ) | |
| PAUL T. CROFT | ) | Judges McDonough/Steger |

## INDICTMENT

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this Indictment:

## PERSONS AND BUSINESS ENTITIES

1. PAUL T. CROFT ("CROFT") resides in the suburbs of Chicago, Illinois, but maintains other residences elsewhere in the United States. He was the majority owner of Croft & Frost and the majority owner and Chief Visionary Officer of Rhino Onward International.

2. Jonathan D. Frost (aka J.D. Frost) ("Frost") resides in Chattanooga, Tennessee. Until the suspension of his accounting license on or about February 2, 2024, Frost was a Certified Public Accountant in Tennessee. He was a part-owner of Croft & Frost and Rhino Onward International, and responsible for the day-to-day operations of both entities. On February 11, 2026, Frost waived indictment and pleaded guilty to an information charging him

with violations of 18 U.S.C. §§ 1349, 1956(h), and 371, in a matter styled *United States v. Jonathan Frost*, Case No. 1:26-CR-0004 (E.D. Tenn.).

3. Croft & Frost, LLC ("Croft & Frost"), was an accounting firm organized under the laws of the State of Tennessee, with its principal place of business at 1413 Chestnut Street, Suite 401, in Chattanooga, Tennessee. Croft & Frost was formed through the merger of Frost & Company and Croft Enterprises, as a joint venture formed by CROFT and Frost in or around September of 2021.

4. Rhino Onward International ("ROI") was a company formed by CROFT and Frost in January 2022 for the stated purpose of soliciting investments from individuals and entities.

5. Croft & Frost, Croft Enterprises, and ROI were organizations that operated in and the activities of which affected interstate commerce.

6. The Well Fund LLC was a limited liability company organized under the laws of the State of Tennessee on June 11, 2020, formed for the stated purpose of soliciting investments from individuals and entities.

7. Scorpio Ref LLC, doing business as Scorpio Fund, was a limited liability company organized under the laws of the State of Illinois and was created by CROFT in or about March 2022 for the stated purpose of soliciting investments from individuals and entities.

8. ROI Fund I was a limited liability company organized under the laws of the State of Tennessee on November 28, 2022, formed for the stated purpose of soliciting investments from individuals and entities.

9. ROI Fund II was a limited liability company organized under the laws of the State of Tennessee on January 2, 2023, and formed for the stated purpose of soliciting investments from individuals and entities.

10. ROI Fund III was a limited liability company organized under the laws of the State of Tennessee on March 20, 2023, and formed for the stated purpose of soliciting investments from individuals and entities.

11. ROI Fund IV was a limited liability company organized under the laws of the State of Tennessee on March 23, 2023, and formed for the stated purpose of soliciting investments from individuals and entities.

12. Croft and Frost Fund I was a limited liability company organized under the laws of the State of Tennessee on November 8, 2022, and formed for the stated purpose of soliciting investments from individuals and entities.

13. Croft and Frost Fund II was a limited liability company organized under the laws of the State of Tennessee on February 8, 2023, and formed for the stated purpose of soliciting investments from individuals and entities.

14. Taurus Fund I, II, III, IV, and V were entities formed for the stated purpose of soliciting investments from individuals and entities.

15. Gemini Twins was an entity formed on or about June 20, 2022, for the stated purpose of soliciting investments from individuals and entities.

16. Beginning in and around 2022, CROFT and Frost filed multiple Form D Rule 506(b) registration exemption notices with the Securities Exchange Commission for investment offerings in a variety of newly created limited liability companies for the stated purpose of facilitating investment in Rhino Onward International, a purported green energy project promoted at the website https://www.rhinoonward.com. Among others, these LLCs were designated "Scorpio Ref, LLC," (DBA Scorpio LLC) "ROI Fund, LLC," "ROI Fund I, LLC," "ROI Fund II LLC," and "The Well Fund (I, II, III, and IV)." The designated address specified in these filings was 1413 Chestnut Street, Suite 401 in Chattanooga, Tennessee 37402, which was also the address for Frost & Company. Notice filings were made for these purportedly exempt securities with the Tennessee Securities Division.

## THE CROFT AND FROST SCHEME

17. Beginning in or about 2020 and continuing until a time not earlier than the date of this Indictment, CROFT, and other co-conspirators known and unknown to the Grand Jury, implemented a scheme through which they sought to steal as much money as possible through peddling worthless investments to unsuspecting victims.

18. The scheme involved soliciting victims' funds through the false representation that such funds would be used to construct a facility that would use solar energy to extract hydrogen gas from water (the "Hydrogen Plant"). Victims were told that the resulting hydrogen could be sold for various lucrative purposes, including as an emission-free fuel for automotive and aviation use. Victims were also told that their investments would qualify them for significant "green energy" tax credits through current and anticipated "Green New Deal" legislation and the Inflation Reduction Act of August 2022.

19. In exchange for handing over exorbitant sums of money, victims were given contractual instruments signed by one of the owners of Croft & Frost, commonly styled as promissory notes and sometimes purporting to transfer ownership interests in particular funds offered by Croft & Frost, providing for repayment of the principal and the payment of interest on designated dates.

20. As part of their scheme, and to create the false appearance that the victims' funds were being invested, CROFT and Frost created a series of funds, including but not limited to Taurus, Scorpio, and Gemini Twins. Despite having different names, all these purported funds

had the singular purpose of parting victims from their money and using it for all manner of purposes other than constructing a Hydrogen Plant, including the financing of the co-conspirators' personal use and self-indulgent lifestyles.

21. As part of the scheme, and to disguise the scheme's fraudulent nature, the co-conspirators engaged in transfers of the victims' money among various bank accounts and created bogus funds with names such as Taurus Fund I and ROI Fund I, LLC, which sounded legitimate as repositories for the purloined cash, all the while concealing the conversion of the money to their own use.

22. To create the illusion of investment returns, a portion of funds received from new investors would be paid out to earlier investors. Having sufficient funds to make such payments required CROFT, Frost, and persons working at their behest, to recruit additional investors. When sufficient funds could not be obtained in that manner, CROFT and Frost procured short-term loans from private lenders who charged exorbitant interest rates.

23. To facilitate the deception that prospective investors' funds would be used for constructing a Hydrogen Plant, CROFT and Frost created, and paid other persons to create, promotional materials, including business plans and PowerPoint presentations, containing false representations regarding ROI, its ability to construct and operate a Hydrogen Plant, and ROI's purported earning potential.

24. Victims were told by CROFT and Frost that the money they provided to the co-

conspirators would be placed into funds that would be used to establish the Hydrogen Plant when, in truth and in fact and as known to the co-conspirators, the money was not used for that purpose. Instead, money provided by victims was deposited into one of two commingled bank accounts then paid out (1) to earlier victims under the guise of return on investment; (2) as salaries and sales commissions for CROFT, Frost, their employees and associates, and other co-conspirators known and unknown to the Grand Jury; (3) to cover overhead and operating expenses of Croft & Frost; (4) for principal and interest payment on short-term, high interest loans obtained periodically to forestall the financial collapse of Croft & Frost; and (5) to pay for residences, extravagant vehicles, jewelry, fine wines and cigars, country club memberships, golf outings, junkets to vacation destinations, and other trappings of the co-conspirators' lavish and self-indulgent lifestyles.

25. Because the funds solicited from investors were not actually being used to construct a Hydrogen Plant and generated no actual investment returns, a continual infusion of money was needed to pay for Croft & Frost operational expenses and to maintain the appearance of a financially viable business entity. Victims who were due periodic "interest" payments and those whose funds had "matured" were encouraged by CROFT, Frost, and their co-conspirators to transfer their investments into new and purportedly more lucrative funds. Victims who were unwilling to do so and insisted on the payment of funds as promised were placed on a "squeaky wheel" list and scheduled for repayment as soon as possible, lest they continue asking

uncomfortable questions.

26. One victim, whose identity is known to the Grand Jury and whose initials are "P.D.," became sufficiently dismayed by Croft & Frost's failure to make payments as promised that he began contacting other victims regarding his concerns. In response, on or about December 15, 2023, CROFT emailed P.D. a text message purportedly from "Officer Hickland" of the Illinois Department of Homeland Security threatening P.D. with criminal investigation for defamation if P.D. continued making statements about CROFT through email and social media.

27. In September of 2023, additional funds were no longer available. Croft & Frost employees could not be paid. Frost abruptly shut down Croft & Frost operations in Chattanooga.

28. In furtherance of the fraudulent scheme and to accomplish the ends thereof, the co-conspirators engaged in the following actions, among others:

a. On June 30, 2023, at the behest of Frost, an individual whose identity is known to the Grand Jury and whose initials are "BK," spoke by telephone with an individual whose identity is known to the Grand Jury whose initials are "C.R." During the telephone call, BK told C.R. that BK had secured a lease with a Native American tribe where the Hydrogen Plant was to be constructed, when in truth and in fact and as known to CROFT, Frost, and BK, no lease had been signed. On or about the same day, based upon the material

misrepresentations communicated to him, C.R. wired $500,000 to ROI for the purpose of investment in the Hydrogen Plant.

b. On March 25, 2022, an individual whose initials are "C.F." and whose identity is known to the Grand Jury was sent an ROI Business Plan, prepared by BK at the behest of CROFT and Frost. Based upon material misrepresentations contained in the ROI Business Plan, C.F. invested $25,000 in the Scorpio Fund on August 5, 2022.

c. On February 1, 2023, an individual whose initials are "S.D." and whose identity is known to the Grand Jury invested $5 million in ROI for use with the Hydrogen Plant project. The money was not used for that purpose, however, but was used to pay lenders who provided short-term, high-interest financing.

d. On October 10, 2023, during a video conference with ROI investors, CROFT falsely stated that ROI was completely independent of Croft & Frost, when in truth and in fact and as known to CROFT, the funds of ROI and Croft & Frost were commingled.

e. On April 8, 2024, Croft was approached by FBI agents and was served a target letter, providing notice that Croft was the target of a federal investigation into his fraudulent activities. On July 29, 2024, Croft was

notified that Croft & Frost was under investigation by the Securities Exchange Commission. Croft fraudulently withheld the fact that both he and Croft & Frost were under investigation while attempting to solicit additional investments from victims.

**COUNT ONE**

**CONSPIRACY TO COMMIT WIRE FRAUD**

**(18 U.S.C. § 1349)**

29. The allegations contained in paragraphs 1 through 28, including subparts, are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1349.

30. From in or about 2020 through no earlier than the date of this Indictment, in the Eastern District of Tennessee, and elsewhere, CROFT and other co-conspirators known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury, to commit offenses against the United States, including violations of Title 18, United States Code, Section 1343 (wire fraud).

**OBJECTS OF THE CONSPIRACY**

31. It was a part and object of the conspiracy that CROFT, Frost, and other co-conspirators known and unknown to the Grand Jury having devised a scheme and artifice for the purpose of defrauding and obtaining money and property by means of false and fraudulent

pretenses and representations, would and did cause to be transmitted by means of wire and radio communication, in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

**MANNER AND MEANS**

32. In furtherance of the conspiracy, and to accomplish the ends thereof, CROFT, Frost, and other co-conspirators known and unknown to the Grand Jury, used the following means, among others:

a. CROFT, Frost, and other co-conspirators known and unknown to the Grand Jury contacted and caused to be contacted individuals for the purpose of obtaining money based on the intentional and material misrepresentation that the money would be used to fund the construction of a facility that would use solar energy to extract hydrogen from water (hereinafter, the "Hydrogen Plant"), while in truth and in fact and as known to the co-conspirators, the money would be converted to the personal use of CROFT, Frost, and their co-conspirators.

b. CROFT, Frost, and their co-conspirators used means of wire communication in and affecting interstate commerce including, without limitation, telephone calls, cellular telephone text messaging, and the internet, to make intentional,

material misrepresentations including, without limitation, that investors' money would be used for the construction of a Hydrogen Plant.

c. On or about May 12, 2021, Frost received the sum of $147,000 from an individual who is known to the Grand Jury and whose initials are "C.F.," based upon the material misrepresentation that Frost and his co-conspirators made to C.F. that such money would be used for construction of a Hydrogen Plant. Upon receipt of the $147,000 into a bank account they controlled, Frost and his co-conspirators used none of the funds for construction of a Hydrogen Plant. Instead, Frost and his co-conspirators converted the $147,000 to their personal use.

All in violation of Title 18, United States Code, Section 1349.

**COUNT TWO**

**CONSPIRACY TO COMMIT MONEY LAUNDERING**

**(18 U.S.C. § 1956(h))**

33. The allegations contained in paragraphs 1 through 32, including subparts, are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 1956(h).

34. From in or about 2020 through the date of this Indictment, in the Eastern District of Tennessee, and elsewhere, CROFT, Frost, and their co-conspirators did knowingly combine,

conspire, confederate and agree with each other, and with others known and unknown, to commit money laundering offenses against the United States, to wit:

a. to conduct and attempt to conduct a financial transaction that involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, while knowing that the transaction involved property representing proceeds of some form of unlawful activity, with the intent to promote the carrying on of a specified unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i);

b. to conduct and attempt to conduct a financial transaction that involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, while knowing that the transaction involved property representing the proceeds of some form of unlawful activity, and while also knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i); and

c. to engage and attempt to engage in a monetary transaction that involved property of a value greater than $10,000 that was derived from specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, while

knowing that the transaction involved criminally derived property, in violation of 18 U.S.C. §§ 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE

## CONSPIRACY TO DEFRAUD THE UNITED STATES

## (18 U.S.C. § 371)

35. The allegations contained in paragraphs 1 through 34, including subparts, are incorporated herein by reference for the purpose of alleging conspiracy in violation of 18 U.S.C. § 371.

36. From on or about January 1, 2021, the exact date being unknown, and continuing thereafter up to and including the date of this Indictment, in the Eastern District of Tennessee and elsewhere, defendant CROFT and his co-conspirators, did unlawfully, voluntarily, intentionally and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

## MANNER AND MEANS

37. The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

a. Advising clients to designate themselves falsely as partnerships for purposes of filing income tax returns, in order to fraudulently appear to qualify for deductions and exemptions to which they would not have been entitled as individual filers.

b. Advising clients to falsely and fraudulently deduct from their taxable income as business expenses various expenditures that were in fact unrelated to income-producing activities.

c. The fraudulent preparation and filing of approximately 4,000 to 5,000 false income tax returns and amended income tax returns that Croft and his co-conspirators knew to contain materially false taxable income information based upon the knowing inclusion of materially false deductions and exemptions, which collectively resulted in a tax loss of approximately $8,143,043.27 to the United States.

## OVERT ACTS

38. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed in the Eastern District of Tennessee, and elsewhere:

a. Between approximately April 19, 2021, and August 2, 2021, CROFT and his co-conspirators transmitted to the Internal Revenue Service Forms 1065, Forms 1040X, and a Form 1040, for tax years 2018 through 2020, for an individual whose identity is known and whose initials are "K.S.," which forms falsely reported partnership gross receipts and business losses in a manner that resulted in tax losses to the United States of approximately $20,205 for the 2018, 2019, and 2020 tax years, collectively.

In violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1. The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461.

2. Pursuant to 18 U.S.C. § 981(a)(1)(C), upon conviction of any offense in violation of 18 U.S.C. §§ 1349, any defendant so convicted shall forfeit to the United States any property, real or personal, constituting or traceable to the proceeds of any violation of 18 U.S.C. § 1349, including but not limited to the following property:

> (a) A personal money judgment against the defendant and in favor of the United States of an amount not less than $56,000,000, representing the amount of proceeds obtained as a result of an offense in violation of 18 U.S.C. § 1349; and
>
> (b) One 2022 Lamborghini Urus, green in color, VIN ZPBUA1ZL1NLA16353, registered to Paul Croft.

3. Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. § 1956, any defendant so convicted shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following property:

> (a) A personal money judgment against the defendant and in favor of the United States of an amount not less than $70,000,000, representing the amount of proceeds obtained as a result of an offense in violation of 18 U.S.C. § 1956(h); and

(b) One 2022 Lamborghini Urus, green in color, VIN ZPBUA1ZL1NLA16353, registered to Paul Croft.

4. If any of the property described above, as a result of any act or omission of a defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461.

A TRUE BILL:

[redacted]

FOREPERSON

FRANCIS HAMILTON III
UNITED STATES ATTORNEY

Frank M. Dale, Jr.
Frank Clark
Christopher Poole
Assistant United States Attorneys